Nelan Unemployment Compensation Case.

Argued April 16, 1969.   Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

*John G. Wayman,* with him *John H. Hill,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Sydney Reuben,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*A. E. Lawson,* with him *Bernard Kleiman,* for intervening appellees.

OPINION BY WATKINS, J., June 12, 1969:

These are appeals in unemployment compensation cases from the decisions of the Unemployment Compensation Board of Review that held a work stoppage at the Penn Manufacturing Corporation to be a lockout and not a strike, and so awarded benefits to the claimants.

The claimants are two plant employees of the Penn Manufacturing Corporation of Washington, Pennsylvania, Robert L. Nelan and Joseph Huffman, Jr. It has been stipulated by the parties that these appeals will determine the claims of fifty-six (56) other members of the local union of the United Steel Workers of America, in the appellant plant, affected by the work stoppage.

The referee, in two decisions following four hearings found in favor of the claimants; the Board of Review ruled unanimously, after argument, in favor of the claimants.

The claimants were represented in collective bargaining by the United Steel Workers of America which had negotiated contracts between the parties for a period of six (6) years. The most recent were dated August 1, 1962, June 1, 1964, and August 29, 1966.

By letter dated March 25, 1966 the union notified the company of a desire to start immediate collective bargaining negotiations for a new contract. The expiration date of the current agreement was May 31, 1966. Despite this request the first negotiating meeting was held May 19, 1966, at which meeting no progress was made.

A local union meeting was held on the evening of May 31, 1966. A Mr. Fergus, the company attorney, was contacted at the company office. The record indicates that the president of the company was also present in the company office at the time. According to the record Mr. Fergus was asked if there was something the union could do for "continuation of operations at the shop." It was suggested to the company that work continue under the same conditions as provided in the expiring contract until a new contract could be negotiated, subject to a twenty-four (24) hour notice that could be given to cancel such an arrangement. This offer was rejected by the company and the work stoppage followed.

The record shows that the company insisted that the payment of "vacation pay" was the issue that precipitated the work stoppage which it claims was a strike. This vacation pay was due and payable as earned wages to the employees, but the company insisted that it would not be paid until a new contract was executed. This, the record shows, was contrary to the unvarying practice of the company which had paid vacation wages on June 1 for the last three (3) years. It may perhaps be argued that the withholding of this pay was a negotiating weapon of collective bargaining but it most certainly could not be used as a reason for refusing to continue operations as offered by the union.

The company also contended that the offer of the union was unreasonable in the requirement of a twenty-

four (24) hour notice. It contended that such a notice was impossible because of the forging business conducted by the company so that service could be assured to their customers. However, there was testimony by the company that "I feel that we might have gone on in that way" (with the twenty-four hour notice). There was also testimony that the employer had operated on a three day per week basis at prior times and also on a day on-day off schedule which supported the findings of the Board that the twenty-four (24) hour notice was reasonable.

The findings of fact by the Board are conclusive if supported by competent evidence. *Stillman Unemployment Compensation Case*, 161 Pa. Superior Ct., 569, 56 A. 2d 380 (1948). The credibility of witnesses, weight of their testimony, and the reasonable inferences to be drawn from the testimony are for the Board alone. Conflicts in testimony are also for resolution by the Board. *Corgliano Unemployment Compensation Case*, 193 Pa. Superior Ct. 9, 163 A. 2d 686 (1960). The record must also be studied in the light most favorable to the winning party. *Caperila Unemployment Compensation Case*, 200 Pa. Superior Ct. 357, 188 A. 2d 759 (1963).

The pertinent findings of fact by the Board are as follows:

"4. Prior thereto, on March 25, 1966, the union had notified the company by letter that they were willing and desired to meet at the earliest possible date to negotiate for a new contract.

"5. Subsequent to March 25, 1966, management did call one meeting which was held with union representatives on May 19, 1966, which meeting was not fruitful in that a new contract was not agreed upon.

"6. On May 31, 1966, the union officials notified the employer that the employees had voted to continue working after May 31, 1966, and the same terms and

conditions as provided in the previous contract, with the understanding that at least a twenty-four hour strike notice would be given by the union if a strike was to be called by the union.

"7. In prior years the employer paid vacation pay on the first of June for the respective year.

"8. The union officials requested the employer to pay vacation pay as soon as practicable on or after June 1, 1966.

"9. The employer refused to pay the vacation pay until after the negotiation of a new contract.

"10. The employer also refused to accept the union's offer to continue to work on a twenty-four hour notice.

"11. The employer's refusal to agree to the vacation pay and the offer of the union to continue to work on a twenty-four hour notice caused a work stoppage which commenced on June 1, 1966."

The real issue in this case is whether the offer to continue working under the suggested offer of the union with the twenty-four (24) hour notice, which was refused by the company, was reasonable. The Board found as a fact that it was reasonable and the company's insistence that vacation pay be withheld until a new agreement was executed was a change in the conditions under which the parties worked under the last agreement. The findings are supported by competent evidence and are binding on this Court. *Klima Unemployment Compensation Case,* 400 Pa. 440, 163 A. 2d 91 (1960). *Vrotney Unemployment Compensation Case,* 205 Pa. Superior Ct. 489, 211 A. 2d 23 (1965).

Decisions affirmed.