Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Haughton Elevator Company, Appellant.

Argued May 9, 1975, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

Robert H. Shoop, Jr., with him *Jay A. Erstling*, and *Thorp, Reed & Armstrong*, for appellant.

*Daniel R. Schuckers*, Assistant Attorney General, with him *Sydney Reuben*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for appellee.

OPINION BY JUDGE BLATT, October 3, 1975:

This action is one of three appeals taken from rulings of the Unemployment Compensation Board of Review (Board) in each of which the Board held the claimants to be eligible for unemployment compensation benefits because they were out of work due to a lockout by their employers.

In this case, the claimants were employed by the Haughton Elevator Company (Haughton) and were represented for collective bargaining purposes by the International Union of Elevator Constructors (IUEC). Haughton had been represented by National Elevator Industries, Inc. (NEII) for collective bargaining purposes, and sometime in November of 1971 the IUEC and NEII began to negotiate to replace the existing collective bargaining agreement which was scheduled to expire on March 23, 1972. By that date, however, no new agreement had been reached and, at the suggestion of the federal mediator assigned to the case, the IUEC and NEII agreed to prevent the existing contract from expiring by extending that contract upon two conditions. These conditions, as the record of testimony indicates but as the Board for some reason did not specifically find, were that: 1) any new agreement would be applied retroactively to March 23, 1972; and that 2) both parties had the right to

terminate the extended agreement upon twenty-four hours notice. At 2:00 A.M. on March 29, NEII notified the IUEC that it was exercising its right to terminate the extended agreement. During the day of March 29, the IUEC notified its membership by telegram as follows:

"At 2 A.M. March 29 NEII notified the IUEC that it was exercising its right to give a twenty-four hour termination notice of the standard agreement under the day to day extension that was agreed to on March 23. Thus our agreement terminates at 2 A.M. Thursday, March 30. All IUEC members are to cease work as of that time."

As a result of all of the foregoing a work stoppage ensued as of March 30, 1972.

Under Section 402(d) of the Unemployment Compensation Law, 43 P. S. §802(d)[1]

"An employee shall be ineligible for compensation for any week—

. . . .

"(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed
. . . ."

The Board, of course, has the ultimate task of resolving factual matters in these cases and also the task of applying the law to those facts. It concluded here that the work stoppage was due to a lockout by the employer.

Our review is confined to questions of law, with all questions of evidentiary weight and the inference to be drawn from the evidence being left to the Board, and the findings of the Board which are supported by substantial evidence are binding upon this Court. *Yasgur v. Unemployment Compensation Board of Review*, 16 Pa. Com-

---

1. Act of December 5, 1936, Second Ex. Sess. P. L. (1937) 2897, *as amended*.

monwealth Ct. 33, 328 A.2d 908 (1974). The Board rendered eleven numbered findings of fact, the first eight of which are summarized in the preceding discussion, except, as noted above, that the Board did not in either its findings of fact or its discussion of the law indicate that the extended contract included a provision for the retroactive application of any future agreement. The Board also found that "[t]he claimant was willing to continue working on the same terms and conditions as had existed under the expired collective bargaining agreement" but that "[o]n March 29, 1972 at the end of his workday, claimant was informed by the company supervisor to turn in his tools and keys to the stock boxes and the shanties. Company representatives then placed new locks on the stock boxes and shanties."

With only a minimum discussion of the applicable law, the Board concluded that "[s]ince the employer terminated the extension of the pre-existing contract, and since the employer took away the claimant's tools and keys so that claimant could not continue to work, the employer failed to maintain the status quo, and therefore responsibility for the work stoppage must be assessed against the employer, and, accordingly, the work stoppage is considered to be a lockout. . . ." Benefits, therefore, were allowed and Haughton has appealed to this Court.

The appellants here argue that neither the facts nor the law support the notion that this work stoppage constituted a lockout. Our Supreme Court has previously held that the test to be applied to determine whether or not a work stoppage constitutes a strike or a lockout is as follows:

"Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit

work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'. . . ." *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960). *Accord, Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968). And where the work stoppage takes the form of a strike, the Supreme Court has held that the burden is upon the union to demonstrate its willingness to maintain the status quo while the employer refused to do so. *Philco Corp. v. Unemployment Compensation Board of Review, supra.*

As a threshold matter, therefore, we must determine the standard by which to measure the status quo.

Generally in order to maintain the status quo, it is not necessary for the employer to execute an actual agreement extending the expired contract, it must only allow work to continue under the terms and conditions *of the expired contract. Boboski Unemployment Compensation Case,* 206 Pa. Superior Ct. 96, 211 A.2d 124 (1965). In this case, apart from the finding that Haughton collected tools and keys and changed locks on stock boxes and shanties, which we shall discuss later, the Board made no finding and drew no conclusion that Haughton had refused to permit work to continue under the terms and conditions of the contract originally due to expire on March 23, 1972. However, counsel for the Board, the appellee herein, argues that the status quo is not measured on the basis of the terms and conditions under *that* contract but on the basis of the terms and conditions *of the agreement to extend that contract.* Those conditions would include, by admission of all herein involved, provision for the retroactivity of the terms under any new collective bargaining agreement, a provision not in exist-

ence under the contract which was due to expire March 23, 1972. The appellee Board suggests that, when the NEII terminated the interim agreement and eliminated the retroactive application of the terms and conditions of a new contract, it had unilaterally altered the status quo and must consequently be held to have locked out its employees under the *Vrotney* test, *supra.* Under this theory, the Board argues that, whenever the union and the employer agree upon changes to the expired collective bargaining agreement pending the execution of a new agreement, a new or moving status quo results. In other words, it is the Board's position that the status quo moves from that which existed under the expired contract to that which comes into existence under any interim agreement. This argument overlooks one important point, however, for even under a status quo based upon the interim agreement, the NEII in this case has not violated the conditions specified in that interim agreement. The NEII has merely exercised its right to terminate that agreement, a right fully exercisable as a condition of the agreement. And, as such a condition, the right to terminate must also be treated as part of the status quo.

In most labor disputes, where the parties enter into interim agreements, nearly all such agreements contain similar termination clauses. It would seem futile, therefore, to recognize the Board's concept of a new or moving status quo, for it would have little meaning in such circumstances. Because we believe, however, that the NEII has not unilaterally altered the status quo by merely exercising its recognized right to terminate within the status quo, we need not decide whether or not a moving status quo would be a recognizable concept in unemployment compensation cases where similar termination conditions were not provided. What is clear is that, in this case, the action by the NEII in terminating the day-to-day extension was not a sufficient reason for the IUEC members to fail to report for work on March 30, 1973,

for the NEII action did not alter the status quo which should have been measured by the *continued availability of work* under the terms and conditions of the contract which expired March 23, 1972.

With respect to the terms and conditions of this contract which expired March 23, 1972, the Board concluded that the claimant was prevented from continuing work thereunder because the employer had collected the claimant's tools and keys to stock boxes and shanties and had changed the locks on some of the same. The NEII argues on the other hand that these actions were nothing more than normal preparations taken in anticipation of a strike. If so interpreted, they would not be indicative of a lockout. *Philco Corp., supra.* Although the weight of the evidence might have supported the Board's interpretation, the Board failed to make any specific finding or conclusion either way on this issue. And, while we must draw all reasonable inferences in favor of the party prevailing before the Board, it is incumbent upon the Board to render findings of fact and conclusions upon those issues vital to a just determination of the claim so that its decision may be properly reviewed. *Sturniolo v. Unemployment Compensation Board of Review,* 19 Pa. Commonwealth Ct. 475, 338 A.2d 794 (1975); *Boob v. Unemployment Compensation Board of Review,* 18 Pa. Commonwealth Ct. 624, 337 A.2d 293 (1975). We, therefore, must issue the following

ORDER

AND NOW, this 3rd day of October, 1975, the decision and order of the Unemployment Compensation Board of Review is hereby reversed and this record shall be remanded to the Board for action and determination consistent with the above opinion.