Morysville Body Works, Inc., Appellant v. Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania. Eugene Heydt, et al., Intervening Party Appellees.

Argued February 1, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Susan Carroll,* with her *James D. Crawford, J B. Millard Tyson,* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

*Joseph Lurie,* with him *Galfand, Berger, Senesky, Lurie & March,* for intervening appellees.

OPINION BY JUDGE WILKINSON, March 17, 1977:

This appeal arises from an order of the Unemployment Compensation Board of Review (Board) granting 43 employes and former employes (claimants) unemployment compensation benefits because they were out of work due to a lockout by their employer. We reverse.

In this case, claimants, members of Local 6622 of the United Steel Workers of America, were employed by the Morysville Body Works. The collective bargaining agreement between the parties expired on February 28, 1974, and each side agreed to work under the terms of the old written contract until March 4. On March 4 what the parties then regarded as an oral agreement was reached and work was to continue under its terms while management drafted a new written contract not merely reducing the oral contract to writing but including necessary revisions in the old

written contract to accommodate the new terms which had been discussed and settled. Work continued until March 27 when a written contract, with changes from the old contract not discussed or agreed to on March 4, was presented to and rejected by the union. The union offered to continue working under its concept of the oral agreement which, according to claimants, had never been put into effect for complaints arose at the first pay period. The Company refused the offer and on March 28, 1974, picket lines were established. After a hearing a referee refused to award benefits, but was reversed by the Board which characterized the work stoppage as a lockout.

Section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(d) provides, *inter alia*:

> An employe shall be ineligible for compensation for any week—
>
> . . . .
>
> In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

Our Supreme Court has held that the sole test in determining whether a work stoppage is a lockout is:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and main-

tain the status quo, then the resulting work
stoppage constitutes a 'lockout' . . . .

*Vrotney Unemployment Compensation Case,* 400 Pa.
440, 444-45, 163 A.2d 91, 93-94 (1960).

The narrow issue on appeal is whether the oral in-
complete agreement of March 4, 1974, created a new
or shifting status quo. If so, upon the March 27 im-
passe, the offer by the union to continue working un-
der the oral agreement fulfilled its obligation under
*Vrotney.* If not, the union would have had to offer
to continue working under the terms of the pre-exist-
ing complete written agreement—which it did not do.

The issue was previously raised in *Unemployment
Compensation Board of Review v. Haughton Elevator
Co.,* 21 Pa. Commonwealth Ct. 307, 345 A.2d 297
(1975), where we held that management's termination
of an interim agreement containing a termination-at-
will clause did not breach the status quo as long as
work was allowed to continue under the prior written
contract. We held, however, ''we need not decide
whether or not a moving status quo would be a recog-
nizable concept in unemployment compensation cases
where similar termination conditions were not provid-
ed.'' *Id.* at 313, 345 A.2d at 300. Here, where we are
confronted with an oral incomplete agreement not yet
reduced to its final written form and not covering
points subsequently at issue and agreement on which
is essential to implement the so-called oral agreement,
we must reject the concept of a shifting status quo.
We need not decide whether the doctrine may apply
to a written complete interim agreement without a ter-
mination-at-will clause.

The record of this case is the starting point of our
analysis. While both management and labor agree
that each thought that an agreement was reached on
March 4, 1974, their different interpretations of what
was agreed to surfaced immediately when manage-

ment explained its interpretation of the agreement to non-union employes. Further evidence of differences arose when the first paychecks under the oral agreement were issued. Also, management, when drawing up the written contract, unilaterally made changes in the old contract which it felt were necessary and reasonable to implement and make complete the oral agreement and shift to a new pay system. The changes were seen in a different light by the union.

The foregoing illustrates typical problems which may arise before an incomplete oral agreement is made final, even when all parties act in the best of faith. Each party may have a different conception of what was agreed to—giving rise to a question of whether there was a meeting of the minds at all. Also, even if major terms to a new contract are agreed to, their effect on other terms in the old contract may not be realized or agreed to, as indeed appears to be the case here. The problems are compounded by a reliance on parol evidence. Therefore, we deem it unwise to regard a preliminary incomplete oral agreement as a new status quo for purposes of Section 402(d). Whether anything less than a written interim contract could create a new status quo need not be decided. At the very least, an oral interim contract would have to be complete, covering all points in contest, to create a new status quo. Such is not the case here.

Accordingly, we will enter the following

ORDER

Now, March 17, 1977, the order of the Unemployment Compensation Board of Review, decision number B-129590, issued January 16, 1976, is reversed and benefits to claimants are denied.