William C. Burkes, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Montour School District, Respondents.

Leslie A. Fusco, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Montour School District, Respondents.

John J. Aloi, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Montour School District, Respondents.

Jacqueline W. Erkel, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Montour School District, Respondents.

Richard A. Shevchik, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Montour School District, Respondents.

Argued May 8, 1979, before President Judge Bow-
MAN and Judges Crumlish, Jr., Wilkinson, Jr., Men-
cer, Rogers, Blatt and MacPhail. Judges DiSalle
and Craig did not participate.

*Shelley W. Elovitz,* for petitioner.

*Michael D. Klein,* Assistant Attorney General, with
him *Richard Wagner,* Assistant Attorney General,
Chief Counsel, and *Edward G. Biester, Jr.,* Attorney
General, for respondent.

Opinion by Judge Wilkinson, Jr., June 25, 1979:
This is an appeal to determine whether 217 school
teachers (collectively referred to as claimants) em-
ployed by the Montour School District (employer) are
eligible for unemployment compensation benefits cov-

ering a period during which they were out of work during a labor dispute between the employer and the Montour Education Association (union).[1] The unemployment compensation authorities determined the work stoppage was the result of a strike and denied benefits pursuant to Section 402(d) of the Unemployment Compensation Law (Law).[2] We affirm.

The collective bargaining agreement between the parties expired on August 31, 1976. On September 10, negotiators for the employer and the union approved and initialled a new three year agreement. The union membership ratified the agreement on September 12 and returned to work the next day ending a strike which began on September 7. On September 28 the employer notified the union that the amounts of the salary increases for the second and third years contained in the proposed formal written agreement were at odds with what the employer understood to be the agreement reached by the parties on September 10. Accordingly, the employer notified the union that it would not formally execute the proposed agreement. During subsequent negotiations on September 29 and 30 the employer offered to continue operations under the terms and conditions of the first year provisions,

---

[1] There is a serious question of whether any of these five cases, other than No. 2005 C.D. 1977, is before us properly. Motions to quash have been filed. It is not necessary to consider these motions because our decision on the merits has the same result. Accordingly, the motions to quash are dismissed without consideration.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(d) which provides:

An employe shall be ineligible for compensation for any week—

. . . .

(d) In which his unemployment is due to a stoppage of work which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed. . . .

which had been implemented following the resumption of work on September 13, if the union would agree to sign a waiver that the implementation of these provisions would not affect the employer's right to negotiate salary schedules for the second and third year of the contract. The union refused to sign the waiver and instead offered to continue working under the first year provisions if the employer would submit the question of the validity of the salary schedules for the second and third year contained in the proposed agreement to binding arbitration. The employer refused binding arbitration on the salary schedules for the second and third years. On October 1, the union established picket lines. At no time did the employer say that work was not available. The union, at a meeting on September 30, 1976 agreed not to report for work October 1, 1976. The work stoppage continued until November 15, 1976 when the school teachers returned to work under a court order.

At the hearing before the referee, claimant Shevchik testified that on September 10 the agreement reached involved average salary increases of $1,302 for the first year, $1,555 for the second year and $1,100 for the third year. Nevertheless, the solicitor for the employer testified that the salary schedule for the second year as embodied in the proposed formal written contract submitted for final execution to the employer contained an average salary increase for the second year of $2,068. Following 11 numbered findings of fact briefly summarized above, the referee concluded work was available for the claimants under the terms and conditions of the first year of the agreement. These were the terms and conditions under which the common pleas court ordered the teachers to return to work and they did so.

On appeal here claimants argue the action of the employer must be deemed a constructive "lockout"

within the exemption from ineligibility for benefits under Section 402(d) of the Law. Their contention, briefly summarized, is that the employer's refusal to submit to binding arbitration on the issue of the validity of the second and third year salary schedules constituted a shift of the status quo, as that term is recognized in our unemployment compensation law regarding work stoppages, since the terms and conditions of the first year of the agreement contain a grievance and arbitration procedure. Alternatively, claimants argue the employer's lack of assurances regarding the terms and conditions of employment with respect to the first year constituted unreasonable conduct or a breach of contract and that this Court should adopt the position that unemployment compensation benefits be granted to employees who engage in a work stoppage precipitated by an employer's failure to comply with the terms of a collective bargaining agreement.

As is apparent, the factual posture of this case presents a curious mixture of the facts contained in two distinct lines of cases heretofore distinguishable under the labor dispute provision of Section 402(d) of the Law, *i.e.* those cases involving a work stoppage which occurs after the expiration of a collective bargaining agreement and those cases in which a work stoppage occurs during a collective bargaining agreement. Put another way, this Court must now decide by what manner we are to measure the status quo in the hiatus between the expiration of a collective bargaining agreement and the execution of a new formal agreement.

In cases where a work stoppage takes the form of a strike, which is alleged by the employees to be a constructive lockout, this Court has held that the burden is upon the employees to demonstrate their willingness to maintain the status quo and the employer's refusal to do so. *Unemployment Compensation Board of Review v. Haughton Elevator Co.,* 21 Pa. Commonwealth

Ct. 307, 345 A.2d 297 (1975). The test in determining the nature of the status quo, in turn, is:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations?

*Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93 (1960).

Applying this test to the instant case, the record is clear that following the teachers' return to work on September 13 until the work stoppage on October 1, the relevant provisions of the first year of the recommended agreement, including both economic and noneconomic matters, had been put into effect. Further, although the record contains testimony of discussions between the employer and union concerning the applicability of certain noneconomic provisions of the first year during the period of proposed re-negotiation, the record amply supports the conclusion that the dispute and the ensuing work stoppage centered *solely* on the salary schedules for the second and third years of the contract. Thus, we find substantial evidence in the record to support the referee's final finding of fact that work was available under the terms and conditions of the first year of the recommended agreement,[3] and conclude, therefore, that this was the status quo the

---

[3] In its brief, the Unemployment Compensation Board of Review argues that the status quo in this case should be determined to be the date of the expired contract, relying on our decisions in *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 297, 370 A.2d 820 (1977) and *Unemployment Compensation Board of Review v. Haughton Elevator*

union and the employer were obliged to maintain. Within this context, the record amply demonstrates that the willingness of the claimants to continue working was not conditioned merely upon the continued employment under the terms and conditions of the first year contract provisions, essentially the maintenance of the status quo; it was upon the further condition that the legality of the second and third year contract provisions be submitted to binding arbitration. There was no obligation on the part of the employer, in maintaining the status quo at the time of the work stoppage, to submit the issue of the pay scale of the second and third years of the recommended agreement to binding arbitration. Claimants' argument that the grievance and arbitration provisions of the first year contract gives rise to an obligation on the part of the employer to submit to binding arbitration on the second and third years of the disputed portions of the agreement is without merit. *Cf. McCracken Unemployment Compensation Case,* 187 Pa. Superior Ct. 403, 144 A.2d 679 (1958) (allocatur refused).

Similarly, we must reject claimants' contention that the employer's action in refusing to execute the recommended agreement constituted unreasonable conduct or a breach of contract which should justify the granting of unemployment compensation benefits. It has long been the law of Pennsylvania that unemployment resulting from a work stoppage due to an alleged breach of contract is not compensable. *See Accurti Unemployment Compensation Case,* 187 Pa. Superior Ct. 391, 144 A.2d 673 (1958) (allocatur refused); *Byerly Unemployment Compensation Case,* 171 Pa. Superior Ct. 303, 90 A.2d 322 (1952).

*Co., supra.* It is not necessary to go that far to decide this case. We will not conjecture as to the nature of the status quo had the employer here refused to continue operations under the first year contract provisions.

Accordingly, we will enter the following

ORDER

AND NOW, June 25, 1979, the order of the Unemployment Compensation Board of Review, Decision No. B-149445, dated September 14, 1977, is hereby affirmed.