Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, James Peter Collins and Bethlehem Education Association, Respondents.

Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Deborah J. Smith and Bethlehem Education Association, Respondents.

Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Viola Mae Long and Bethlehem Education Association, Respondents.

Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, John Joseph Hippensteal and Bethlehem Education Association, Respondents.

Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Lawrence Lee Deutsch and Bethlehem Education Association, Respondents.

Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Robert G. Frey and Bethlehem Education Association, Respondents.

Bethlehem Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, R. Lynn Shelley and Bethlehem Education Association, Respondents.

Argued June 6, 1979, before President Judge Bow-MAN and Judges CRUMLISH, JR., MENCER, BLATT, DI-SALLE, CRAIG and MACPHAIL. Judges WILKINSON, JR. and ROGERS did not participate.

500

*Paul F. McHale, Jr.*, with him *Frank J. Danyi, Jr.*, and *Maloney, Danyi, Goodman, Hensel & Center*, for petitioner.

*Daniel R. Schuckers*, Assistant Attorney General, and *Catherine C. O'Toole*, with them *Richard Wagner*, Assistant Attorney General, and *Edward G. Biester, Jr.*, for respondents.

OPINION BY JUDGE DiSALLE, September 7, 1979:

These consolidated petitions for review ask us to determine the eligibility of several applicants for unemployment compensation benefits covering a period of time in which they were out of work during a labor dispute between their union, the Bethlehem Education Association (Association), and the Bethlehem Area School District (School District).

The referee and the Unemployment Compensation Board of Review (Board) determined that the work stoppage between September 8, 1977, and September 19, 1977, constituted a lockout. Accordingly, the claimants were awarded benefits. The School District appeals, contending that the work stoppage was a strike and that benefits would be barred under Section 402 (d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(d).

Section 402(d) provides relevantly that:

> An employe shall be ineligible for compensation for any week—
>
> . . . .
>
> (d)   In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

The sole test to be applied under this Section to determine whether the work stoppage constitutes a strike or a lockout was enunciated in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960):

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

This rule underwent refinement in *Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968), wherein our Supreme Court noted that when, as here, the work stoppage takes the form of a strike, the burden is on the union to show that it made the initial "peace" move by offering to continue the status quo.

Against these legal principles, we must now analyze the operative facts of the instant case. The significant events span a nine day period, beginning on August 31, 1977, when a three-year collective bargaining agreement between the School District and the union expired, and ending on September 19, 1977, when work resumed following settlement of the labor dispute.

On August 31, 1977, the Association notified the School District in writing that it was willing to continue to bargain in good faith with an extension of the collective bargaining agreement on a day-to-day basis. By memorandum dated September 1, 1977, the School District informed claimants that the fringe benefits which had been granted pursuant to the expired contract would no longer be paid and that arrangements for their continuation would have to be made on an individual basis. Thereafter, on September 5, 1977, the Association presented the School District's negotiator with a proposed extension agreement asserting that it would agree to extend all terms and conditions of the collective bargaining agreement on a day-to-day basis, but that either party could terminate the agreement on forty-eight hours' notice.

The next significant event occurred on September 6, 1977, when the Association sent a telegram to the School District which included the following:

This is to inform the district the instructional staff is reporting for regular assigned service on Tuesday, 6 September and on Wednesday, 7 September, despite the district's refusal to accept our written offers of 31 August and of 5 September to extend the recently expired collective bargaining agreement, and despite your letter of 1 September to each of our members, even though each of the same constitute a lockout. However, unless a written response is re-

ceived, preferably by return telegram, we will assume you continue to reject any and all offers to provide work for the members of the professional bargaining unit under all the identical terms and conditions of the said recently expired collective bargaining agreement. Even though our position continues to be inclusive of a willingness to work under the said identical terms and conditions of the said recently expired collective bargaining agreement, and on Thursday, 8 September, we will take those steps necessary to protect our interests.

It also appears that at a negotiating meeting held on September 7, 1977, the School District representative requested a pledge that the Association agree not to strike for a sixty-day period. However, the representative indicated that several articles of the expired collective bargaining agreement were "in" and others were "out". The Board concluded that the School District's offer was conditional in nature since it expressly found that "[f]ollowing the expiration of the collective bargaining agreement on August 31, 1977, the school district did not, at any time, offer to extend all the terms and conditions of said collective bargaining agreement." The claimants did in fact work on September 6 and 7, 1977, but as a result of the School District's failure to respond to their proposed extension agreement, and more specifically, since the School District refused to extend the fringe benefit provisions past the expiration date of the collective bargaining agreement, they did not report thereafter.

The School District maintains initially that the Association failed to sustain its threshold burden of proof as enunciated in *Philco;* that is, that the proposed extension agreement maintained the status quo. It is further claimed that even assuming that the proposed agreement continued the pre-existing terms and

conditions of employment, the offer to continue such work was not for "a reasonable time." Finally, the School District submits that at all times it was willing to extend the status quo.

Our inquiry into whether either party intended the status quo to be maintained requires an analysis of the necessity of continuing those fringe benefits included in the expired collective bargaining agreement. The crux of the School District's argument in this regard is that the Association was under an erroneous belief that it was entitled to a continuation of the fringe benefit provisions. Indeed, the School District claims that it had no duty to provide fringe benefits beyond the expiration of the collective bargaining agreement and its decision not to provide them did not disrupt the status quo.

While it is not necessary for an employer to execute an actual agreement extending the expired contract in order to maintain the status quo, work must nevertheless be permitted to continue under the terms and conditions of the expired contract. *Unemployment Compensation Board of Review v. Haughton Elevator Co.*, 21 Pa. Commonwealth Ct. 307, 345 A.2d 297 (1975). Certainly, the phrase "terms and conditions of the expired contract" includes the fringe benefits due the employes under that contract. Even if the withholding of such fringe benefits as Blue Cross, Blue Shield, dental coverage, life insurance, and income protection (which the School District in fact terminated here) were a negotiating weapon of collective bargaining, it could not be used in this context as a reason for refusing to continue operations as offered by the Association. *See Nelan Unemployment Compensation Case,* 215 Pa. Superior Ct. 310, 264 A.2d 726 (1969). The Association was, therefore, acting in conformity with the law when it expected these benefits to continue under its proposed extension agree-

ment. Conversely, the School District's actions in refusing to extend such benefits can only be viewed as an impediment to the continuation of the status quo.

We must now address the issue of whether the Association's offer to extend the expired contract on a day-to-day basis with a forty-eight hour termination notice requirement was for "a reasonable time." What constitutes a reasonable time varies depending on the circumstances of a particular case. *Compare Lerch Unemployment Compensation Case,* 400 Pa. 446, 163 A.2d 535 (1960), *with Nelan Unemployment Compensation Case, supra.* In this case, the School District did not object to the time limitations proposed by the Association, nor did it suggest that a day-to-day extension or forty-eight hour termination notice requirement would adversely affect the continued operation of the schools. Consequently, we must conclude, as we did in *McKeesport Area School District v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979), that the claimants offered to continue working for a reasonable time.

In summary, the Board properly concluded that it was the School District, and not the Association, which refused to maintain the status quo and that the work stoppage was a lockout. Accordingly, we affirm.

ORDER

AND Now, this 7th day of September, 1979, the orders of the Unemployment Compensation Board of Review, Decision Nos. B-156328 to and including B-156334, dated April 13, 1978, awarding benefits to James Peter Collins, Deborah J. Smith, Viola Mae Long, John Joseph Hippensteal, Lawrence Lee Deutsch, Robert G. Frey and R. Lynn Shelley, are hereby affirmed.