Elizabeth Forward School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Thomas S. Geyer (token claimant), Respondents.

Elizabeth Forward School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Rudolph Scheuerle (token claimant), Respondents.

Argued September 8, 1980, before Judges WILKIN-SON, JR., ROGERS and CRAIG, sitting as a panel of three.

*Michael Ira Levin,* of *Cleckner and Fearen,* for petitioner.

*Shelley W. Elovitz,* with her *Elsa Newman-Silver-stine,* Assistant Attorney General, *Ronald N. Watz-man,* and *Robert Balbis,* for respondents.

OPINION BY JUDGE CRAIG, October 7, 1980:

The Elizabeth Forward School District (district) petitions for review of the orders of the Unemployment Compensation Board of Review which affirmed the referee's awards of benefits, for the weeks ending

September 2, 1978 through September 23, 1978, to Thomas S. Geyer and Rudolph J. Scheuerle, two token claimants. The referee concluded that claimants' unemployment during that period, although related to a labor dispute, was the result of a lockout by the district within the meaning of Section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. [1937] 2897, *as amended,* 43 P.S. §802(d). The appeals have been consolidated by this court's order.[1]

The established test to be applied in determining whether a work stoppage is a strike or a lockout is that which the Supreme Court articulated in *Vrotney Unemployment Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960):

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

---

[1] Claimant Geyer represents those teachers who perform services during the regular school year but do not perform services during the summer recess period; claimant Scheuerle represents those teachers who perform services during the school year and who performed services during a portion of the summer months. Separate proceedings, not relevant to the case before us, were conducted relative to these two classes of employees, for the period before August 28, 1978, and the period after September 23, 1978.

The events revealed by the record, to be measured against that rule, are as follows:

In January, 1978, negotiations commenced between the district and the Elizabeth Forward Education Association (association) in anticipation of the June 30, 1978 expiration of the collective bargaining agreement. At the initial session, the district proposed "operating procedures" to be followed if a new agreement were not reached by the end of June. The district contends that the association "agreed" with those procedures but the association characterizes the outcome of that meeting as "confusion"; the association did send a letter, dated January 14, 1978, informing the district of its opposition to the proposed procedures. That letter indicated that the association was amenable to extension of the existing contract if no new agreement was attained by the end of June.

Nevertheless, on January 19, 1978, the district board adopted the contested procedures by resolution.[2]

Negotiations continued through the spring of 1978. The association offered on several occasions to extend

---

[2] The salient portions of that resolution are as follows:

1. The existing contract with the EFEA will not be extended beyond the June 30, 1978 expiration date.

2. All fringe benefits granted to the employees under the present teacher contract will be discontinued as of midnight June 30, 1978. An employee may voluntarily continue coverage at his own expense upon written notification to the District Office. The notification and payment must be accomplished during regular business hours no later than June 29, 1978. Failure to do so automatically terminates all fringe benefits.

3. There will be no retroactivity to July 1, 1978 for any successor agreement that is negotiated. Any new agreement reached after July 1, 1978 will become effective upon the date of signature by both parties.

4. There will be no school or school activities until a successor contract is finalized.

5. There will be no make-up days beyond those required by law.

the existing contract if the necessity should arise, but the district did not accede to those requests. The association made the last of such offers on June 21 and June 28; the district gave no response to the offer of June 21 and specifically rejected the offer of June 28.

The association remained amenable to extension of the expired contract as negotiations were pursued through the summer months. Despite the lack of a new agreement or an extension of the old, the district scheduled school to open for faculty on August 25; the students were to return on August 28.

On August 23, the district offered what it denominated an "interim contract" whereby the teachers would return on August 25, at the salaries embodied in the expired contract, and the district would resume payment of fringe benefits as of September 1; however, this interim proposal also provided that it would incorporate the expired agreement as *modified* by items tentatively agreed upon in the negotiation of the new contract. The association rejected that offer, and on August 24 again offered to continue work, stating that its members would report on August 25 under all the terms and conditions of the expired agreement, requesting that the status quo be maintained as of July 1, 1978, until such time as an agreement was reached or a work stoppage occurred.

The district rejected that offer, and the association informed the district that its members would not report on August 25 because the district would not allow work to continue under the terms and conditions of the old contract.

The faculty did not report on August 25, and negotiation continued. The district, through federal mediators, made two offers on September 27, both of which were rejected. The teachers returned on November 6, 1978, after reaching a tentative agreement in the Court of Common Pleas of Allegheny County. However, these latter offers and the ultimate end of the

work stoppage are not germane to our present inquiry.[3]

The district's argument here is twofold. Initially, the district contends that its "interim contract" offer of August 23, in its own words, "an extension altering the pre-existing collective bargaining agreement only as to items both parties had tentatively agreed to and payment of fringe benefits starting in September of 1978," did not amount to such an alteration of the pre-existing terms and conditions as to constitute a refusal to maintain the status quo. Secondly, the district contends that the association's offer to continue work under the previous contract terms on a day-to-day basis was unreasonable. We address these issues in the order stated.

We agree with the referee and the board that the district's offer of August 23 did not constitute an offer to maintain the status quo, for several reasons.

First, the *Vrotney* test requires an offer to continue work under the pre-existing terms and conditions of employment. The alterations proposed by the district were categorically alterations, not the pre-existing terms and conditions of employment. This case is not one where, because of interim agreement by the parties and a subsequent work stoppage, a question arises as to which of two sets of terms and conditions is to be considered the status quo for the purposes of the *Vrotney* test, as in *Morysville Body Works v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 297, 370 A.2d 820 (1977) and *Unemployment Compensation Board of Review v. Haughton Elevator*, 21 Pa. Commonwealth Ct. 307, 345 A.2d 297 (1975).

Secondly, the proposed alterations were, as the district itself describes them, "tentatively agreed to." As above, these tentative agreements, made not in the

---

[3] *See* footnote 1, *supra*.

context of a negotiated interim agreement but in the context of incomplete negotiation of a full agreement, do not create a new status quo for the purposes of the *Vrotney* test. *Morysville, supra; Haughton, supra.*

As to the fringe benefit question, we fail to see how the district's offer to resume premium payments only as of September 1 could be viewed as maintaining pre-existing terms and conditions, when the faculty were to resume their duties on August 25. That gap is not made reasonable, as the district suggests, by the fact that many of the faculty had made the premium payments on their own behalf during July and August. Had the district not departed from the status quo by its termination of those premium payments at the expiration of the old contract, the occasion for those individual payments would not have arisen.

The district's contention that a late August agreement to continue the "status quo as of July 1," requiring the district to reimburse premium payments made by individual teachers, would be violative of Section 1006 of the Public Employe Relations Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1006,[4] is without merit. The work stoppage under consideration here did not commence until the faculty declined to report as scheduled on August 25. Again, had the district concurred in extending the terms of the old contract, as offered by the union before its expiration, the district would have been obligated to continue those payments during July and August just as they were obligated to, and did, make those payments during that segment of the summer recess before June 30. *Bethlehem Area School District v. Unemployment Compen-*

---

[4] Section 1006 forbids public employees from receiving any compensation from their public employer during a strike. As our opinion text notes, there was no work stoppage before August 25, and, after that date, by virtue of the employer's position, the stoppage must be classified as a lockout.

*sation Board of Review*, 45 Pa. Commonwealth Ct. 498, 405 A.2d 1026 (1979).

The second argument raised by the district is that the association's offer of August 24, to work under the terms of the expired contract on a day-to-day basis, is not an offer to continue for a reasonable time under the *Vrotney* test.

We have never categorically classed a day-to-day extension as unreasonable in the school context, but have always held that a reasonable time depends upon the circumstances; *See McKeesport Area School District v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979). Here the district has offered no more than conclusory statements concerning the alleged difficulties of such an arrangement. Moreover, as the district's negotiator admitted, the district "never raised the issue of the day-to-day extension"; thus, following *Bethlehem Area School District, supra,* such an extension basis was not unreasonable here.

Because we find no error in the conclusion that the work stoppage in question was the result of a lockout and not a strike, we will affirm the decisions appealed.

ORDER

AND Now, this 7th day of October, 1980, the May 29, 1979 orders of the Unemployment Compensation Board of Review, at Nos. B-172668 and B-172669, are affirmed.