Richard Grzech (Token), Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Beloit-Manhattan, Inc., Intervenor.

10

Argued October 8, 1980, before Judges Craig, Mac-Phail and Williams, Jr., sitting as a panel of three.

*Thomas W. Jennings,* with him *Jeffery S. Orchinik,* for petitioner.

*Warren M. Laddon,* with him *William J. Flannery, Morgan, Lewis & Bockius,* for intervenor.

Opinion by Judge MacPhail, January 6, 1981:
Richard Grzech (Petitioner) appeals to this Court from an order of the Unemployment Compensation

Board of Review (Board) dated June 22, 1979, denying him unemployment compensation benefits (Benefits). The Board affirmed the referee's determination that his unemployment was due to a strike and that Petitioner was ineligible for Benefits under the provisions of Section 402(d) of the Pennsylvania Unemployment Compensation Law.[1]

Petitioner is one of forty individuals employed by Beloit Manhattan Co., Inc. (Employer) and represented for purposes of collective bargaining by Local 1971, International Association of Machinists and Aerospace Workers (Union). The Employer and the Union had previously entered a labor-management agreement from August 13, 1976 to August 12, 1978.

After a series of negotiating sessions, the Employer submitted a "final offer" to the Union on Friday, August 11, 1978. The Union representative immediately asked the Employer if it would be amenable, in the event the union members rejected this final offer, to permitting the production workers to work under the conditions of the existing collective bargaining Agreement (Agreement) until a new Agreement was reached. The Employer refused. Despite the refusal, the Union sent a mailgram, after the session concluded, to the Employer reiterating its offer. On Saturday, August 12, 1978, the day the Agreement expired, the union members voted to reject the Employer's final offer. No strike vote was taken at this time.

---

[1] Section 402(d) of the Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(d), reads in pertinent part as follows:

An employee shall be ineligible for compensation for any week—

. . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

On Monday, August 14, 1978, the next scheduled working day after the Agreement expired, the Petitioner and other employees were permitted to work the entire first shift. During the course of the first shift, the second shift union steward attempted to gain access to the Employer's premises to check the status of the collective bargaining negotiations with the Petitioner, the chief union steward. The Employer denied access. This denial was reported to the Union's business representative. At 3:30 P.M., August 14, 1978, the Union sent the Employer a mailgram advising it that the Union interpreted the Employer's refusal to accept the Union's offer on August 11, 1978 and failure to answer the mailgram containing the same offer as a lockout. The Union members voted to strike and the second shift employees did not report to work.

On Tuesday, August 15, 1978, the Employer sent a telegram to the Union accepting the Union offer. The Union did not respond to the telegram and the work stoppage continued.

The Petitioner and thirty-nine others applied for Benefits from the Bureau (now Office) of Employment Security (Office). The Office found that their unemployment was due to a work stoppage which existed because of a labor dispute other than a lockout and Benefits were denied. The Union and the Employer agreed that the Petitioner would serve as the "token" claimant and that a final decision as to him would constitute formal precedent for the other thirty-nine similarly situated employees. The Petitioner filed an appeal from the Office's initial determination. The referee affirmed the Office's determination and the Petitioner appealed to the Board. The Board affirmed the referee's decision. Petitioner then appealed to this Court.

. . .

The Petitioner raises two issues before this Court. He argues that the Employer by its actions precipitated a constructive lockout prior to the strike by the Union, thereby rendering the Petitioner eligible for Benefits. The Petitioner further argues that the Board capriciously disregarded competent evidence in making this determination.

The gravamen of this appeal is whether the work stoppage which occurred was due to a "strike" or a "lockout." The well recognized test for legally differentiating strikes from lockouts was stated by our Supreme Court in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960). The essential question to be answered is:

> Have the employees offered to continue working for a reasonable time under the preexisting terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Id.* at 444-45, 163 A.2d at 93-94.

The test was further explained in *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968) where the Court said, "[L]ogically the test of whether a work stoppage resulted from a strike or a lockout requires us to determine which side, union or management, first refused to continue operations under the status quo after the

contract had technically expired, but while negotiations were continuing." *Id.* at 103, 242 A.2d at 455.

This Court has held that where a work stoppage takes the form of a strike and a constructive lockout is alleged, the employees have the burden to demonstrate their willingness to maintain the status quo and the employer's refusal to do so. *Woodford v. Unemployment Compensation Board of Review*, 47 Pa. Commonwealth Ct. 232, 407 A.2d 916 (1979); *Burkes v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 521, 402 A.2d 731 (1979) and *Unemployment Compensation Board of Review v. Haughton Elevator Co.*, 21 Pa. Commonwealth Ct. 307, 345 A.2d 297 (1975).

In the case at bar, the Petitioner has clearly shown that the Union did offer to continue working under the old agreement and to maintain the status quo. Its members showed up for work on the next scheduled working day after the Agreement expired. The first shift employees in fact did work that day. The Petitioner, however, argues that the Employer's refusal of the Union's offer at the August 11, 1978 meeting and the Employer's failure to answer the Union's mailgram was a second refusal and that a lockout had occurred. We disagree.

While it is true that the Employer refused the Union's offer on August 11, 1978, this refusal is not sufficient to create a constructive lockout. The Employer used this refusal to buttress the force of its final offer. This tactic was recognized in *Philco, supra.*

Even to laymen and certainly to experienced labor representatives, the realities of the bargaining process are far from unknown. Both labor and management usually approach the bargaining table fully conscious that the bridge between the old and new contracts will not be

crossed before both sides have aired ideas rang-
ing from constructive suggestions to threats of
the most dire consequences. As the Superior
Court said in Hogan Unemployment Compen-
sation Case, 169 Pa. Superior Ct. 554, 561, 83
A.2d 386, 390 (1951): 'the incidents common to
all types of bargaining must be expected and in-
dulged; e.g., wordy chaffering, haggling over
details, maneuvering for position, feigned ulti-
matums, offers of compromise settlements, and
the like.'
430 Pa. at 108, 242 at 458.

To determine if the Employer did refuse the Union
offer we must therefore look at the actions of the Em-
ployer after August 12, 1978, the day the Agreement
expired.

The Employer did not respond to the Union's Au-
gust 11, 1978 mailgram until Tuesday, August 15,
1978. An offer, however, can be accepted by either a
promise or performance. The Employer permitted the
employees to work on August 14, 1978. The Board
found that the Employer had directed its plant super-
visors to inform the employees that the conditions of
employment were the same.[2] This hardly shows that
the Employer has refused to let Union members work.
We find that under the facts of this case that the Em-
ployer accepted the Union's offer by performance.

---

[2] Although the Employer dealt directly with the employees in-
stead of with the Union, this procedure is not of such significance
to constitute a refusal of the Union's offer. Even if we were to hold
the employer was partly to blame for the work stoppage, the Board's
decision would not be changed. Compensation must be denied if
fault for a work stoppage is attributable to both employer and em-
ployees. *Toma v. Unemployment Compensation Board of Review*, 4
Pa. Commonwealth Ct. 38, 285 A.2d 201 (1971); and *Parise Unem-
ployment Compensation Case*, 188 Pa. Superior Ct. 569, 149 A.2d 683
(1959).

Petitioner further contends that the Employer's refusal to permit the second shift steward to enter the premises during the first shift altered the status quo. We disagree.

Resolutions of conflict in the evidence presented, determination of the weight to be given the evidence as well as questions of credibility are matters for the Board to determine. *Bowman v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 170, 410 A.2d 422 (1980).

Petitioner alleges that off-shift stewards were permitted to enter the Employer's premises on any Union business. The Employer testified and the Board found that off-shift stewards were permitted on the Employer's premises only when they were involved in grievance proceedings which had been scheduled during another shift. Even the Petitioner's own witness could not state any other instances where off-shift stewards were permitted on the Employer's premises. Clearly the Employer did not alter the status quo by refusing admittance to the steward from the second shift.

Petitioner had the burden to prove the Employer refused to permit work to continue under the preexisting conditions. Petitioner has not met his burden.

Petitioner finally argues that the Board erred by capriciously disregarding competent evidence in determining that the work stoppage was due to a strike and not a lockout. We again disagree. Where, as in this case, the burden of proof is with the party who did not prevail below, our review is to determine whether the Board capriciously disregarded competent evidence. *Houff Transfer, Inc. v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979). We have carefully reviewed the record and find that the Board did not err in its decision. There was a factual dispute as to

what occurred. Because the Board agreed with the employer's version doesn't mean it *disregarded* the Petitioner's evidence; rather, the Board gave less credence to it. That was the Board's prerogative.

We hold that the work stoppage was due to a strike by the Union. Accordingly, the Board's order No. B-173499 dated June 22, 1979 is hereby affirmed.

#### Order

AND Now, this 6th day of January, 1981, the order of the Unemployment Compensation Board of Review, No. B-173499 dated June 22, 1979, denying unemployment compensation benefits to Richard Grzech (Token) is hereby affirmed.