Local 730, United Association of Journeymen and Apprentices of the Plumbing and Pipe-Fitting Industry et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Trane Company, Intervenor.

Argued September 18, 1981, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Robert D. Mariani, Mariani and Greco,* for petitioners.

No appearance for respondent.

*Sheldon Rosenberg,* with him *Nancy Abrams, Rosenberg & Ufberg,* for intervenor.

OPINION BY JUDGE BLATT, December 15, 1981:

The petitioner, Local 730 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe-Fitting Industry (Union), appeals, on behalf of 120 of its members, a decision of the Unemployment Compensation Board of Review (Board). This decision adopted a Referee's order denying the claims on the basis that the claimants had engaged in a work stoppage other than a lockout and therefore were ineligible for such benefits under Section 402(d) of the Unemployment Compensation Law.[1]

After a careful examination of the record, we find that the following summary of the Referee's findings of fact was made without a capricious disregard of competent evidence.[2] The claimants were last em-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d) reads, in pertinent part:

An employe shall be ineligible for compensation for any week—

. . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

[2] Our scope of review in unemployment cases where, as here, the party with the burden of proof did not prevail below is to determine whether or not the findings of fact were consistent with each other,

ployed by the Trane Company (Employer) as production and maintenance employees and the terms and conditions of their employment were governed by a collective bargaining agreement entered into between the Employer and the Union which was effective from June 26, 1976 until the expiration date of April 1, 1979. Beginning on February 27, 1979, and up until March 29, 1979, approximately 12 negotiation meetings were conducted between the Union and the Employer but the parties were unable to agree to a new collective bargaining agreement although they reached a tentative agreement as to noneconomic issues. At a meeting on March 30, 1979, the chief negotiator for the Union presented a letter to the Employer which formally offered, effective when the existing agreement expired, to continue working for a reasonable time under the preexisting terms and conditions of employment so as to avert a work stoppage pending final settlement of the contract negotiations. The Employer's negotiator responded to the Union's letter by indicating that the Employer did not agree to the offer to continue working; however, the maintenance and production employees did report for work on April 2, 1979, and they continued to work under the terms and conditions of the expired agreement until June 15, 1979. At a June 15, 1979 negotiation meeting held by the parties, the Employer presented a list of changes to become effective June 18, 1979, which would *increase (i.e.,* improve) the economic terms and conditions of employment for the employees, and also lists of other changes to become effective March 31, 1980 and March 30, 1981. The Employer then requested that the negotiators for the Union present these changes to the Union members for

with the conclusions of law, with the order, and can be sustained without a capricious disregard of competent evidence. *See Grzech v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 9, 423 A.2d 1364 (1981).

a vote, but the Union's negotiators declined to do so. On June 18, 1979, the Employer unilaterally implemented its proposed changes in economic terms and conditions of employment and the claimants worked under those terms and conditions until July 20, 1979. On July 21, 1979, the Union decided to honor the Employer's request to submit the proposed changes to the membership for a vote and the membership voted to reject the changes and to strike. A work stoppage then ensued. The parties held a few unproductive negotiation meetings up until October 9, 1979, at which time an agreement was reached and work resumed the following day.

In an unemployment case, the issue of whether a work stoppage results from a strike or from a lockout is a mixed question of law and fact, and the Board's conclusion is, therefore, subject to review by this Court. *Aluminum Company of America v. Unemployment Compensation Board of Review*, 9 Pa. Commonwealth Ct. 368, 305 A.2d 389 (1973). The test to be applied in determining whether a work stoppage was due to a lockout or a strike was enunciated by our Supreme Court in the *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444-45, 163 A.2d 91, 93-4 (1960) as follows:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'. . . .

*Id.* Restated, neither party may issue an ultimatum altering the status quo after the contract has technically expired but while negotiations are continuing without bearing the responsibility for the resulting work stoppage. *See Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968); *Unemployment Compensation Board of Review v. Borger Steel Co.,* 30 Pa. Commonwealth Ct. 75, 372 A.2d 969 (1977). And where, as here, a work stoppage takes the form of a strike and a constructive lockout is alleged, the employees/claimants have the burden to demonstrate their willingness to maintain the status quo and the employer's refusal to do so. *Grzech.*

Inasmuch as the Union, acting on behalf of the claimants, did offer in its March 30, 1979 letter (the initial "peace move") to maintain the status quo, we must, therefore, address a somewhat unique situation in unemployment compensation law: namely, whether or not an employer's unilateral implementation of changes *improving*[3] the economic terms and conditions of employment for the employees constitutes a departure from the status quo that would result in a work stoppage in the form of a lockout thereby enabling the claimants to receive benefits.

The Union argues here that the Board erred in adopting the Referee's decision because he had failed to consider the effect of the *Unemployment Compensation Board of Review v. Sun Oil Co.,* 476 Pa. 589, 383 A.2d 519 (1978) decision which is factually identical to the instant matter. In *Sun Oil,* the employer unilaterally implemented some of its contract proposals after the collective bargaining agreement had expired and while negotiations were continuing, and our Supreme Court, in affirming our decision, held that the

___
[3] The Union felt such "increases" were below what they desired.

claimants therein were eligible for benefits because the employer by its actions, refused to further extend the expiring contract and to maintain the status quo.

The Employer, here, however, contends that *Sun Oil* is not controlling because: (1) the Employer in the instant situation, unlike the employer in *Sun Oil,* has *improved* the economic terms and conditions of employment for the employees and therefore the element of coercion prohibited by *Vrotney* and *Philco Corp.* is not present; and (2) the claimants, by working for approximately 33 days under the implemented proposals ratified such proposals or acquiesced in their existence thereby creating a *new* status quo. We reject the Employer's first argument on the basis that neither our *Sun Oil* opinion[4] nor the Supreme Court's opinion explicitly mentions the employer therein as implementing proposals materially *worsening* the economic terms or conditions of employment for the employees. Rather, our opinion in *Sun Oil* merely states that the employer "may well have believed that the implemented changes were of a minor nature and were for the employees' benefit". *Id.* 19 Pa. Commonwealth Ct. at 453, 338 A.2d at 713; similarly, our Supreme Court noted that "Sun Oil points out that . . . refinery workers at its Toledo, Ohio plant went out on strike, having rejected a wage offer which the union in the present case considered far superior to any offer that had been made to it." *Id.* 476 Pa. at 594, 383 A.2d at 522. Consequently, on the basis of these inferences which we believe suggest an "increase" as opposed to a "decrease" as urged by the Employer here, we cannot say that the Employer has established that the employer in *Sun Oil* had decreased benefits, or, if so, in any material way or without improving other economic terms

---

[4] 19 Pa. Commonwealth Ct. 447, 338 A.2d 710 (1975) *aff'd* 476 Pa. 589, 383 A.2d 519 (1978).

and conditions of employment for the employees. Additionally, we would note that the rule in *Vrotney* and *Philco* "tends to encourage employers and employees alike to *maintain* the status quo[5] while negotiating a new agreement," *Sun Oil*, 476 Pa. at 595, 383 A.2d at 522, and we recognized here that a seemingly innocuous unilateral *improvement* in the economic terms and conditions of employment by an Employer may very well have a coercive effect on the collective bargaining process which these cases sought to preclude.

As to the Employer's second contention, we note that the claimants in *Sun Oil* continued to work for approximately 28 days after the employer there unilaterally implemented its proposals and our Supreme Court declined[6] to find a ratification or acquiescence by the claimants thereby establishing a *new* status quo. Here, the claimants continued to work for approximately 33 days after the Employer's unilateral implementation, and we must similarly decline to find a ratification or existence of a new status quo in view of *Sun Oil.*

The Employer further argues that the Union ratified the implementations through the actions of its chief negotiatior, who allegedly commented that he was not opposed to them. We have held, however, that proposed alterations tentatively agreed to, when made in the context of incomplete negotiations of a full

[5] In *Unemployment Compensation Board of Review v. Haughton Elevator Co.*, 21 Pa. Commonwealth Ct. 307, 345 A.2d 297 (1975) we noted that "in order to maintain the status quo, it is not necessary for the employer to execute an actual agreement extending the expired contract, it must only allow work to continue under the terms and conditions *of the expired contract*" (emphasis in original). Here, it is obvious that the Employer did not do so.

[6] We cannot substantiate the Employer's contention in its brief, that the union in *Sun Oil* "strenuously opposed" Sun Oil's (employer's) implementation of its proposals, from a close reading of our opinion or the Supreme Court's in that case.

agreement, do *not* create a new status quo for the purposes of the *Vrotney* test, and our review of the record here discloses that such comment was at most a tentative agreement. *Elizabeth Forward School District v. Unemployment Compensation Board of Review*, 54 Pa. Commonwealth Ct. 194, 420 A.2d 785 (1980).

Finally, even if, arguendo, the implementations were approved by the Union, an employer who "alter[s] the balance [of the status quo] even after aiding in its maintenance for a considerable time, must still demonstrate that such action is essential to the continued operation of the company." *Sun Oil*, 19 Pa. Commonwealth Ct. at 453, 338 A.2d at 713. The Employer here failed in this respect.

We believe, therefore, that this Employer's unilateral implementation of its proposed economic terms and conditions of employment constituted a refusal to further extend the expiring contract and maintain the status quo and we will accordingly reverse the Board's order denying the claimants herein benefits.

## ORDER

AND Now, this 15th day of December, 1981, the order of the Unemployment Compensation Board of Review denying the claimants herein benefits is reversed and this matter is hereby remanded to the Board for the computation of benefits.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

Where employees offer to continue to work under an existing contract and the employer *refuses*[1] but employees, after the expiration date of that contract, con-

---

[1] In *Unemployment Compensation Board of Review v. Sun Oil Co.*, 476 Pa. 589, 383 A.2d 519 (1978), cited in the majority opinion, there was an agreement between the employer and the employees to extend the terms of the expired contract on a day to day basis.

tinue to work under the terms of the expired contract and receive *increased* benefits under the employer's unilateral implementation of its own offer, can the employer be held to have locked out the employees when the sole reason for the cessation of work is *their* vote to strike 33 days after the contract expired? The majority answers this question in the affirmative. I cannot, in good conscience, agree.

Accordingly, I respectfully dissent.