Union Spring & Manufacturing Co., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. William D. Lowers and James S. Foley, Intervenors.

Argued September 17, 1981, before President Judge Crumlish, Jr. and Judges Craig and MacPhail, sitting as a panel of three.

*William M. Young, Jr., McNees, Wallace & Nurick,* with him, *Madeline Balk, Seligman & Seligman,* for petitioner.

*Frank J. Lucchino, Grogan, Graffam, McGinley, Solomon & Lucchino,* for intervenors.

No appearance for respondent.

Opinion by Judge MacPhail, November 12, 1981:

Union Spring & Manufacturing Company (Petitioner) appeals to this Court from two orders of the Unemployment Compensation Board of Review (Board) which reversed the orders of a referee and found that William D. Lowers and James S. Foley (Claimants), "token" claimants, were not ineligible

for unemployment compensation benefits pursuant to Section 402(d) of the Unemployment Compensation Law (Law)[1] since their unemployment was due to a "lockout." We affirm.

The following facts found by the Board are supported by substantial evidence in the record. Claimants, both of whom are members of the United Steelworkers of America, Local 1323 (Union),[2] were participants in a work stoppage at Petitioner's premises which commenced on December 15, 1979. The work stoppage occurred as a result of the expiration on December 14, 1979 of a three-year collective bargaining agreement between the Petitioner and the Union. Negotiation sessions aimed at reaching a new agreement were held between negotiating teams for the Petitioner and the Union beginning on October 25, 1979; however, no agreement had been reached by December 14 despite a final negotiation session which was held that day. The crucial events in this case occurred between the end of the final negotiation meeting, and approximately 12:30 A.M. on December 15, 1979. At the conclusion of the final meeting, at approximately 6:00 P.M. on December 14, the Union's chief negotiator expressed the Union's desire to extend the existing contract on a day to day basis so

---

[1] Section 402(d) of the Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(d) reads, in pertinent part, as follows:

An employe shall be ineligible for compensation for any week—

. . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

[2] The Union represents production and maintenance employees of Petitioner.

that the Union could examine the Petitioner's financial records.[3] The Petitioner's chief negotiator denied the request and the meeting adjourned.

It is undisputed that eleven out of fifteen employees scheduled to work the first shift after the expiration of the collective bargaining agreement did report to Petitioner's premises shortly before their shift was to begin at 12:00 A.M. on December 15. Within minutes of the beginning of that shift, two Union members informed the working employees that Petitioner had refused to extend the existing agreement as requested by the . Union. The employees promptly clocked out and the work stoppage here at issue was initiated.

The Bureau (now Office) of Employment Security determined that the Claimants were ineligible for benefits pursuant to Section 402(d) of the Law. Upon Claimants' timely appeals, and after a hearing, the referee affirmed, finding that the work stoppage was due to a labor dispute other than a lockout. The Board reversed and the instant appeal was taken.

The issues presented for our determination are: 1) whether the Board erred as a matter of law when it concluded that the work stoppage was the result of a lockout, and 2) whether the work stoppage, assuming it was initially a lockout, was converted to a strike by the Union's subsequent refusals to return to work under the terms and conditions of the expired collective bargaining agreement.

The test to apply in determining whether a work stoppage was due to a lockout or a strike was set forth by our Supreme Court in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960) as follows:

---

[3] Throughout the preceding negotiations, the Petitioner had offered its books to the Union for its inspection to verify that Petitioner was losing money.

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'. . . .

The law is clear that where, as here, a work stoppage takes the form of a strike, the Union has the burden to demonstrate that it was willing to maintain the status quo while the employer refused to do so. *Unemployment Compensation Board of Review v. Haughton Elevator Co.*, 21 Pa. Commonwealth Ct. 307, 345 A.2d 297 (1975).

The Board applied the *Vrotney* test to its fact findings and concluded that the Petitioner's rejection of the Union's offer to continue working under the terms and conditions of the expiring contract rendered the subsequent work stoppage a lockout. The Petitioner argues that this legal conclusion is in error because the case law is clear that in applying the *Vrotney* test, only those events which occur *after* the contract actually expires are relevant. Since the Petitioner's rejection occurred several hours prior to the expiration of the contract Petitioner contends that fact may not be considered in determining whether a lockout occurred. Petitioner further argues that work was available to Union members on December 15 and that the employees bear the ultimate responsibility for the work stoppage.

The Petitioner points to the recent decision of our Supreme Court in *Borello v. Unemployment Compen-*

*sation Board of Review,* 490 Pa. 607, 417 A.2d 205 (1980) to support its position. In *Borello* the Court said:

> Under [the Vrotney] test the focus is upon the actions of the parties 'after the contract has in fact expired' and immediately preceding the work stoppage. The assertions, demands and threats of the parties prior to that time are not to be controlling. Such responses are to be anticipated in the effort to reach agreement before the expiration deadline. What is of concern is which party is responsible for causing the work stoppage *once it is evident that the expiration date has been reached and a new agreement has not been filed.*

*Id.* at 614, 417 A.2d at 209 (emphasis added, footnote omitted).

While this language does lend support to Petitioner's argument, it is our opinion that when, as here, negotiations are clearly at an end without a new agreement having been signed *and* the expiration *date* has been reached, the refusal of the employer to grant an extension of the contract at that point in time can constitute a lockout. Our conclusion is based on the reason behind the Supreme Court's interpretation of the *Vrotney* test:

> The reasoning for this view is that the parties are entitled to use all legitimate pressures they can bring to bear *during the negotiations.* However, in determining the workers' right to unemployment benefits, entitlement must turn on the actual conduct of the respective sides and not upon *the rhetoric of the negotiations.* (Emphasis added.)

*Borello,* 490 Pa. at 614, 417 A.2d at 209. Furthermore, in *Vrotney* itself the union's offer and the employer's refusal to continue working on the basis of

the expiring contract was made several hours *before* the contract actually expired. Nevertheless, the Court found a lockout had occurred. Finally, in *Hogan Unemployment Compensation Case*, 169 Pa. Superior Ct. 554, 562, 83 A.2d 386, 391 (1951), where the test which our Supreme Court later adopted in *Vrotney* was first set forth, the key question posed was, *"What* occurred *after* negotiations ceased, or failed to produce an agreement, and *what* and *who caused* the work stoppage?" (Emphasis in original, footnote omitted.)

In the instant case, the Board found, based on substantial evidence, that the Union's offer was made "at the very end of the negotiating meeting." It is undisputed that no additional sessions were scheduled or held on December 14. In fact, there is no evidence that the parties were even close to reaching an agreement.[4] Thus we conclude that the negotiations were at a standstill, a new agreement had not been signed and the expiration date had been reached. Under these circumstances, as in *Vrotney,* we find that the Petitioner's refusal to extend the contract was the cause of the work stoppage and constituted a lockout.[5]

---

[4] The Petitioner's chief negotiator testified in this regard that:

   The union in my judgment with their fantastic proposals was failing to see exactly what the facts were and indicated they didn't care what the facts were . . . . Again and again I said, look at our records, and they didn't show no interest until [the Union offer to extend the contract] came up . . . after the meeting had adjourned . . . . I felt that further discussions at that time would have deteriorated at the bargaining rather than help them . . . .

[5] The case now before us is clearly distinguishable from our recent decision in *Grzech v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 9, 423 A.2d 1364 (1981) where we determined that the employer's refusal, *on the day before* the contract expired, to extend the contract was a negotiation tactic used to buttress the employer's final offer. Here negotiations were clearly at an end and no "final offers" were pending.

We also note that the first shift of Union members scheduled to work on December 15 did appear for work, giving additional evidence of their willingness to maintain the status quo. It was only when they learned that Petitioner refused to extend the contract that the employees left work. Moreover, the Petitioner made no effort to inform the employees that the status quo would in fact be maintained.[6] *Cf. Grzech v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 9, 423 A.2d 1364 (1981). (Employer directed supervisors to inform employees who reported for work that conditions of employment remained unchanged.)

The Petitioner's second argument is that even if the work stoppage was initially a lockout, it was later converted to a strike by the Union's refusal at subsequent negotiation sessions to agree to return to work under the terms and conditions of the expired contract. The Petitioner argues that the following fact as found by the Board is unsupported by the evidence:

22. At no time during the negotiations did the employer offer continuing work under the terms and conditions of the agreement which expired on December 14, 1979.

Petitioner concedes as it must, that at the hearing before the referee, the Union's chief negotiator testified that the Petitioner made no offer of continuing work under the terms of the expired contract. Petitioner contends, however, that the credibility of the Union's representative on this point is subject to challenge. Of course, it is the Board's prerogative

---

[6] Our conclusion that the Petitioner is bound by its refusal on December 14 to extend the contract renders it unnecessary to further address the Petitioner's argument that it never informed the Union that there would be changes in the terms and conditions of employment after the contract expired.

to resolve matters of credibility and questions of evidentiary weight. So long as the Board's findings are supported by substantial evidence they are binding on this Court. *Haughton Elevator Co.* Finding of fact No. 22 is clearly supported by substantial evidence.

Orders affirmed.

ORDER

AND Now, this 12th day of November, 1981, the orders of the Unemployment Compensation Board of Review, Decision Nos. B-188432 and B-188433, dated October 7, 1980, are hereby affirmed.