Paul D. Batkowski, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Jesse L. Fry, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Kenneth D. Simcox, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

52

Argued September 14, 1984, before Judges DOYLE, COLINS and PALLADINO, sitting as a panel of three.

*Quintes D. Taglioli,* with him, *Richard H. Markowitz, Markowitz & Richman,* for petitioners.

No appearance for respondent.

*John W. Ferron,* with him, *Don A. Banta, Naphin, Banta & Cox,* and *William R. Tait, Jr., McNerney, Page, Vanderlin & Hall,* for intervenor, Avco Lycoming Division, Avco Corporation

OPINION BY JUDGE PALLADINO, April 30, 1985:

Petitioners in these consolidated appeals are token unemployment compensation claimants who represent the members of the United Auto Workers, AFL-CIO Local 787 (Union). In its decision below, the Unemployment Compensation Board of Review (Board) affirmed a referee's decision denying benefits under Section 402(d) of the Unemployment Compensation Law (Law),[1] concluding that Petitioners' unemployment was due to a strike, rather than a lock-out by Avco Lycoming Division of Avco Corporation (Employer).[2]

The relevant facts, as found by the referee and adopted by the Board, are as follows. The Employer and the Union were parties to a collective bargaining agreement which expired on June 17, 1983. After negotiations failed to produce a new agreement, the Union commenced a work stoppage at 12:01 A.M. on June 18, 1983. At the time of the commencement of the work stoppage, work was available to Union members under the preexisting terms and conditions of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d).

[2] The Employer was granted leave to intervene; the Board did not file a brief or appear to argue.

employment. Petitioners neither reported nor attempted to report to work subsequent to commencement of the work stoppage.

Petitioners applied for unemployment compensation as token representatives of all members of the Union.[3] The Office of Employment Security (OES) found that Petitioners' unemployment was due to a work stoppage which existed because of a labor dispute other than a lock-out and denied benefits under §402(d). After a hearing on appeal, the referee affirmed OES's determination. The Board affirmed the referee's decision.

"A claimant whose employment has been interrupted by a work stoppage arising out of a labor dispute bears the burden of proving that the stoppage resulted from a lockout." *McCormick Dray Lines v. Unemployment Compensation Board of Review*, 74 Pa. Commonwealth Ct. 181, 184, 459 A.2d 74, 76 (1983). Where the party with the burden of proof does not prevail before the Board, our scope of review is limited to determining whether the Board's findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. *Pennsylvania State Police v. Unemployment Compensation Board of Review*, 79 Pa. Commonwealth Ct. 46, 468 A.2d 533 (1983). The question of whether a work stoppage is a strike or a lock-out is a mixed question of fact and law, *Philco Corporation v. Unemployment Compensation Board of Review*, 430 Pa. 101, 242 A.2d 454 (1968), and therefore reviewable by this Court.

Before this Court Petitioners contend: (1) that the Board capriciously disregarded competent evidence in

---

[3] Petitioners are representative of approximately 750 claimants.

failing to find that both before and after commencement of the work stoppage, the Union offered and the Employer refused to continue working under the preexisting terms and conditions of employment; and (2) that the Board erred as a matter of law in determining that their unemployment was the result of a strike and not a lock-out.

Under §402(d) of the Law, an employee is ineligible for unemployment compensation for any week "[i]n which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed."

The well-established test for determining whether a work stoppage is the result of a lock-out or a strike was set forth by our Supreme Court in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), as follows:

> Have the employees offered to continue working for a reasonable time under the preexisting terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification for unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.

*Id.* at 444-45, 163 A.2d at 93-94.

In *Philco*, the Court refined the test by stating: "[L]ogically the test of whether a work stoppage resulted from a strike or a lockout requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Id.* at 103, 242 A.2d at 455.

Here, Petitioners contend that the Board capriciously disregarded competent evidence in failing to find that both before and after commencement of the work stoppage, the Employer refused the Union's offers to continue working under the old agreement and to maintain the status quo. Petitioners argue that these refusals either created a lock-out once the old agreement had expired or, in the alternative, converted a strike to a lock-out.

Our review of the record reveals that with respect to the alleged pre-work stoppage offers, two of the Union's negotiators testified that during negotiating sessions held on May 23 and June 13, 1983,[4] the Employer refused the Union's offers to extend the then current agreement pending further negotiations. The Employer's representative testified that while the Union's negotiators may have made "off-hand remarks" about extending the old agreement, these remarks never materialized into an offer. The Employer's representative further testified that after the old agreement had expired on June 18, 1983, the employees could have continued working under the pre-existing terms and conditions of employment.

---

[4] Petitioners mistakenly argue in their brief that the Union's offer was made on June 17, 1983. However, our review of the record clearly reveals that Petitioners are referring to an offer which was allegedly made at the June 13 negotiation session. There is no reference in the record to any offer being made on June 17.

The Board in its findings of fact found only that at the time the work stoppage began, work was available under the preexisting terms and conditions of employment. No findings were made regarding the Union's alleged offers to extend the old agreement and the Employer's response to these offers.[5] Although an adjudication must include all findings necessary to resolve the issues raised by the evidence which are relevant to the decision, *Lipchak v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 451, 383 A.2d 970 (1978), we do not believe that the Board's failure to making findings with respect to the Union's alleged pre-work stoppage offers to extend the parties' agreement requires that we remand.

This Court has held that the point in time when an employer's refusal to grant an extension of an agreement can constitute a lock-out is when "negotiations are clearly at an end without a new agreement having been signed *and* the expiration *date* has been reached. . . ." *Union Spring and Manufacturing Co. v. Unemployment Compensation Board of Review,* 62 Pa. Commonwealth Ct. 343, 348, 436 A.2d 1048, 1051 (1981) (emphasis in original). This holding was based on our Supreme Court's recognition that:

> The focus [of the Vrotney test] is upon the actions of the parties "after the contract has in fact expired" and immediately preceding the work stoppage. The assertions, demands and threats of the parties prior to that time are not to be controlling. Such responses are to be anticipated in the effort to reach agreement before the expiration deadline. *What is of con-*

---

[5] We may not infer from the absence of a finding that a matter was resolved in favor of the party who prevailed below. *Page's Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975).

cern is which party is responsible for causing the work stoppage once it is evident that the expiration date has been reached and a new agreement has not been signed. . . . The reasoning for this view is that the parties are entitled to use all legitimate pressures they can bring to bear *during the negotiations.* However, in determining the workers' right to unemployment benefits, entitlement must turn on the actual conduct of the respective sides and not upon the rhetoric of negotiations. (Emphasis added, footnote omitted.)

*Borello v. Unemployment Compensation Board of Review,* 490 Pa. 607, 614, 417 A.2d 205, 209 (1980).

Here, the Union's alleged offers to continue working under the expiring agreement were made in one instance three weeks and in the other four days before the agreement actually expired. Of course an employer's refusal to grant an extension of an agreement *need not* be made at the moment of the agreement's expiration for a lock-out to occur. *See Union Spring.* However, where, as here, the Employer's alleged refusal occurs four days before the agreement's expiration date[6] and the Board has found that at the commencement of the work stoppage work was available under the terms and conditions of the expired agreement, such a refusal would not constitute a lockout. Thus, we conclude that even if the Board had found that the Union offered during the May 23 and June 13 negotiating sessions to continue working under the old agreement, the Employer's refusal of these offers would not have constituted a lock-out. *See Grzech v. Unemployment Compensation Board of*

---

[6] The Employer's alleged May 23 refusal, occurring more than three weeks before the agreement's expiration date, would of course not constitute a lock-out.

*Review,* 56 Pa. Commonwealth Ct. 9, 423 A.2d 1364 (1981). (Employer's refusal to extend the agreement on the day before it expired held to be a negotiation tactic used to buttress the Employer's final offer.)

Petitioners next contend that even if the work stoppage was initially a strike, it was later converted to a lock-out by the Employer's refusal at a subsequent negotiating session to allow work to resume under the terms and conditions of the expired agreement. Petitioners again point to the testimony of two of the Union's negotiators who stated that such an offer was made to the Employer at a negotiating session held on August 4, 1983. Petitioners further point to the testimony of the Employer's representative who admitted that such an offer was made by the Union and was not accepted by the Employer.[7] Moreover, according to the Union's minutes of the August 4 session, the Union's negotiator stated that the Union's offer to extend the old agreement "still stands".

In *High v. Unemployment Compensation Board of Review,* Pa. , 479 A.2d 967 (1984), our Supreme Court held that a union's refusal of an employer's offer to resume operations under the terms and con-

---

[7] The Employer's representative testified as follows:

Q: Mr. Clarkson [Employer representative], did you hear Mr. Coup [Union representative] testify earlier that on August 4, 1983 he offered on behalf of the union to continue working under the old contract?

A: Yes.

Q: Are you saying he didn't say that on August 4th?

A: I'm not saying that.

Q: You agree he said that?

A: Yes.

Q: What was the company's response?

A: I don't recall really.

Q: Did the company accept the offer made by Mr. Coup?

A: No.

ditions of an expired agreement converted what was initially a lock-out into a strike. Here, Petitioners argue that if it is determined that the work stoppage was intially a strike, it was, pursuant to *High,* converted to a lock-out as of August 4. However, again, the Board has failed in its role as fact finder. Despite testimony from both parties, there are no findings with respect to the Union's alleged August 4 offer to resume working under the expired agreement. Because we may not infer from the absence of any findings that this matter was resolved in favor of the Employer, *Page's Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975), and because pursuant to *High* such findings are relevant to the decision in this case, a remand is in order. *See Southard v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 178, 454 A.2d 661 (1983).

Accordingly, we vacate the order of the Board and remand for further findings with respect to the Union's alleged August 4, 1983 offer to resume working under the terms and conditions of the expired agreement.

ORDER IN 48 C.D. 1984

AND Now, April 30, 1985, the order of the Unemployment Compensation Board of Review, No. B-224892, in the above-captioned matter is vacated and remanded for further proceedings consistent with the foregoing opinion.

ORDER IN 49 C.D. 1984

AND Now, April 30, 1985, the order of the Unemployment Compensation Board of Review, No. B-224893, in the above-captioned matter is vacated and remanded for further proceedings consistent with the foregoing opinion.

## ORDER IN 50 C.D. 1984

AND Now, April 30, 1985, the order of the Unemployment Compensation Board of Review, No. B-224894, in the above-captioned matter is vacated and remanded for further proceedings consistent with the foregoing opinion.

Judge WILLIAMS, JR., did not participate in the decision in this case.