532 A.2d 57

Robert P. Jehn, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 26, 1987, before Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*William J. Madden, Cusick, Madden, Joyce & McKay*, for petitioner.

*Richard Faux,* Associate Counsel, with him, *James K. Bradley,* Associate Counsel, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, October 9, 1987:

Robert Jehn and seventeen other individuals (claimants) petition for review of an order of the Unemployment Compensation Board of Review (Board) which affirmed in part and reversed in part a referee's decision, thereby denying them benefits.

The claimants are or were employees of Sprang and Company (employer), and are or were represented by the International Brotherhood of Electrical Workers, Local 2179 (union). The labor-management agreement (contract) between the employer and the union expired at midnight on August 15, 1983 after eight negotiation sessions failed to result in a new contract. Accordingly, pickets appeared at the employer's entrances on Sunday, August 14, 1983, and no union members reported to work on Monday, August 15, 1983. Contract nego-

tiations resumed on August 24, 1983. With regard to the events subsequent to August 24, 1983, the referee, whose findings were adopted by the Board, pertinently found that:

9. On September 1, 1983, the union president reported by telephone to the employer that there was a favorable vote to return to work under the old contract if the employer would permit the union members to return to work.

10. On September 6, 1983, the company offered a proposal to the union but the offer was refused by the union due to the following language: 'The level of wages and benefits as well as the other terms and conditions of employment for employee-members hired prior to August 13, 1983, shall be those which were in effect on August 13, 1983. There will be no holiday pay for Labor Day, September 5, 1983. The level of wages and benefits as well as the other terms and conditions of employment for persons hired after August 13, 1983 shall be as determined by the Company.'

11. On that same date, the union made a counter proposal which read as follows: 'It is agreed between the parties to end the work stoppage and to return to work under the terms and conditions of the labor agreement which expired on August 13, 1983. All employees who were on the payroll as of August 13, 1983 shall return to work on the date this agreement becomes effective. This agreement shall continue in effect for a period of one year from the date of its execution, unless otherwise mutually agreed to and the parties agree to bargain in good faith.'

12. The employer insisted that the company agreement be approved or there would be no

return to work. The employer again notified the union that work was available under the old contract, but subject to the employer's new proposal.

13. On September 7, 1983, there were some incidents of violence on the picket line involving the blockade of the entrances to the plant and a car being kicked and further damaged by tossed stones. In addition, roofing nails were spread on the employer's parking lot.

14. On September 9, 1983, an injunction to limit picketing at the site was issued by the Courts.

15. On September 14, 1983, a tentative agreement was reached, and it was agreed between the parties that all would be recalled to work by September 19, 1983 with the exception of those that were placed in layoff status due to lack of work.

The Board therafter concluded that the union was on strike from August 15, 1983 until September 14, 1983 when a tentative agreement was reached, and denied benefits for that period pursuant to Section 402(d) of the Unemployment Compensation Law (Law), 43 P.S. §802(d).[1]

The claimants had the burden of proving that the work stoppage resulted from a lock-out, rather than a strike. *McCormick Dray Lines, Inc. v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 181, 459 A.2d 74 (1983). And, of course, whether a work stoppage results from a strike or a lock-out is a mixed question of law and fact subject to our review.

---

[1] The Office of Employment Security and the referee had denied benefits for the claim week through September 10, 1983 and had granted benefits for the claim week ending September 17, 1983.

*Unemployment Compensation Board of Review v. Borger Steel Co.,* 30 Pa. Commonwealth Ct. 75, 372 A.2d 969 (1977).[2]

The claimants' sole contention on appeal is that the Board's conclusion that the employer offered continuing employment under the terms and conditions of the existing contract is unsupported by either the referee's or the Board's findings of fact. In support of this contention they argue that, on September 1, 1983, the union offered to work under the existing contract but the employer rejected that offer on September 6, 1983. Accordingly, the only claim weeks at issue here are those weeks ending on September 10, 1983 and September 17, 1983.[3]

The test for determining whether or not a work stoppage is the result of a strike or a lock-out, was established by our Supreme Court in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960), as follows:

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms

___

[2] Our scope of review, of course, is limited to determining whether or not constitutional rights were violated, an error of law was committed, or a necessary finding is unsupported by substantial evidence. *Wurster v. Unemployment Compensation Board of Review,* 102 Pa. Commonwealth Ct. 417, 518 A.2d 350 (1986).

[3] Inasmuch as the claimants admit that they were on strike until the union's alleged offer of September 1, 1983, they are ineligible for benefits for the week ending September 3, 1983 because claimants guilty of disqualifying conduct during any portion of a week must lose benefits for that entire week. *Demoss v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 83, 454 A.2d 1146 (1983).

and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lock-out' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Id.* at 444-45, 163 A.2d at 93-94.

The claimants argue that the union made an unconditional offer on September 1, 1983 to return to work, to which the employer did not respond until its September 6, 1983 rejection of that offer. The employer counters by arguing that the union merely offered on September 1, 1983 to continue negotiations. Inasmuch as the claimants are clearly ineligible for benefits for the week ending September 3, 1983, however, we will limit our anaylsis to the events of September 6, 1983, which events we believe are dispositive of this case.

With regard to the events of September 6, 1983, the referee and the Board pertinently found, in finding of fact No. 10, that the employer offered a proposal to the union to return to work, which the union refused. The claimants contend that this finding is not supported by substantial evidence because it was the union, rather than the employer, that made the offer. Our review of the record, however, indicates that the employer and the union both made offers on that date, and that both offers were rejected. The employer offered to allow the employees hired prior to August 13, 1983 to return to work under the old contract, but stated that employees hired after that date would be governed under whatever terms the employer chose to establish. The union, on the other hand, made essentially the same offer[4] as did

---

[4] We find the referee's and the Board's mislabeling of the offer and counter-offer, if erroneous, to be a de minimis error.

the employer; *i.e.* to work under the terms and conditions of the old contract, but conditioned upon the additional provision that the "agreement shall continue in effect for a period of one year from the date of its execution. . . ."

We note that, if the union's statement was an offer to continue working under the status quo of the contract for a *reasonable* period of time pending final settlement of the contract negotiations, then the employer's refusal of that offer would constitute a lock-out under *Vrotney. See Batkowski v. Unemployment Compensation Board of Review,* 89 Pa. Commonwealth Ct. 51, 491 A.2d 953 (1985). If, however, the union's "offer" was, in actuality, an offer for a new one-year contract on the same terms and conditions as the expiring contract, then it was insufficient to convert the strike to a lock-out under *Vrotney. Bishop v. Unemployment Compensation Board of Review,* 90 Pa. Commonwealth Ct. 553, 496 A.2d 110 (1985). And, if the strike continued, of course, the claimants would be ineligible for benefits.

With regard to this issue, the Board pertinently found that:

> In the instant case an examination of the record leads to the conclusion that the Union's offer to return to work under a written contract for a period of one year was, in fact, an attempt to obtain a final end to the negotiations through a contract for a period of one year. The Union's offer was not an attempt to return to work for a reasonable period of time pending negotiation of a new agreement. It is clear from the record that the employer had *already* agreed to indefinitely extend the contract while negotiations continued. The employer only refused to sign a contractural commitment which would have constituted a settlement of the negotiations. Thus, the offer by the Union was not an offer to continue

the status quo for a reasonable period of time while the negotiations proceeded.[5]
And, inasmuch as the Board's findings (*i.e.* that the union's offer was not for a *reasonable* period of time and that the union's offer was in effect for a new contract) are supported by substantial record evidence,[6] we can find no error in the Board's conclusion that the offer by the union was insufficient to convert the strike to a lock-out.

---

[5] Although the quoted statement appears in the Discussion section of the Board's opinion, we note that it contains both factual findings and conclusions of law. And, while we must again express our disapproval of the Board's practice of placing factual findings in the Discussion section, we note that the necessary findings there are sufficient to permit appellate review.

[6] The employer's witness, Mr. Martin, testified in pertinent part as follows:

QEL: Now as a result of [the September 1, 1983] telephone conversation I understand that you arranged a meeting for the date after Labor Day?

AEW1: That is correct.

QEL: The company negotiating committee and the union negotiating committee? .

AEW1: That is correct.

QR: That was September 6th?

AEW1: September 6th, right.

QEL: At that meeting, did the company present a return to work agreement?

AEW1: Yes.

QEL: Alright. Did the union present a return to work agreement?

AEW1: Yes.

. . . .

QEL: Was either one of those proposals accepted by the other side?

AEW1: No, there was no resolution to either one.

. . . .

QEL: Alright, was there work available?

AEW1: There was work available. Work was available all through the strike.

QEL: On what terms and conditions?

AEW1: Under the conditions that existed under the agreement that ended August 13, 1983.

Accordingly, we will affirm the order of the Board.

ORDER

AND NOW, this 9th day of October, 1987, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

———

QEL: Alright, now take a look at Employer Exhibit 3. Alright. Paragraph 3, of that says this agreement shall continue in effect for a period of one year from the date of its execution etcetera, right?

AEW1: Uh hum.

QEL: At the meeting of September 6th was there any moderation by [sic] communicated by the union committee of their insistence that the extension be for a period of one year?

AEW1: No.

. . . .

QR: That proposal made by the union on September 6th why was that not acceptable to the employer?

AEW1: Well I think it primarily dealt with Paragraph 3.

QR: Would you just read it for me please?

AEW1: This agreement shall continue in effect for a period of one year from the date of its execution, unless otherwise mutually agreed to and the parties agree to bargain in good faith.

QR: What was the agreed upon resumption time, do you recall? Resumption time to start back to work after the tentative agreement was reached? How many days if you recall?

AEW1: I think we said some [sic] immediately. I think everyone that was eligible for recall that was not laid off came back immediately on Monday, September 19th.

. . . .

QEL: Alright, looking at the Employer Exhibit Number 3 which is the handwritten proposal by the union that was presented on September 6th to return to work, now is it my understanding that you interpreted that piece of paper as being a proposal by the union to continue the previous contract for a period of one year?

AEW1: That's correct.